UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNOVATIVE ACCOUNTING SOLUTIONS,
INC.,

    Plaintiff,

v.

CREDIT PROCESS ADVISORS, INC. et al.,

    Defendants.
_____/

File No. 1:15-CV-793

HON. PAUL L. MALONEY

## OPINION

    This is an action for damages under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq., which makes it unlawful "to send . . . an unsolicited advertisement" to a fax machine. 47 U.S.C. § 227(b)(1)(C). Plaintiff alleges that Defendants are legally responsible for sending an unsolicited fax advertisement.[1] Before the Court is a motion for summary judgment filed by Defendants Scott Renner and Velo Legal Services, PLC (doing business as Velo Law Office "VLO"). (ECF No. 49.) Renner and VLO maintain that they are not liable because they did not send the fax or direct anyone to do so. In response, Plaintiff argues that Renner and VLO qualify as "senders" under the applicable regulations, 47 C.F.R. § 64.1200(f)(10), because someone sent the fax on their behalf and because the fax advertises or promotes their services. On November 25, 2019, the Court ordered the parties to provide supplemental briefs in light of the Sixth Circuit's opinion in *Health One Medical Center, Eastpointe PLLC v. Mohawk, Inc.*, 889 F.3d 800 (6th Cir. 2018). The parties have done so and the matter is ready for a decision. For the reasons herein, the Court will grant Defendants' motion.

---

[1] A copy of the fax is attached as an exhibit to this Opinion.

## I. Background

Account Adjustment Bureau, Inc. ("AAB") is a collections agency. In 2015, it decided to arrange a series of short educational seminars for its clients about "the tips and best practices of credit and receivable management." (*See* Brochure, ECF No. 1-1.) It asked attorney Scott Renner to speak at the first seminar, to be held in March of that year. AAB was a client of Renner and his law firm, VLO, so he agreed to participate as a favor for AAB. AAB created a brochure to advertise the seminar and sent a copy to Renner for his approval. (3/9/2015 Email to Renner, ECF No. 50-1, PageID.449.) Renner suggested some minor changes.

AAB was unable to generate sufficient interest for the seminar, so AAB postponed it until April. AAB informed Renner of the change in date and emailed him a revised version of the brochure showing the new date. AAB told Renner that it planned to distribute the brochure via an "email broadcast" to its client list. (*Id.*, PageID.447.) Unbeknownst to Renner and VLO, AAB hired Fax Plus to distribute the brochure via fax. Fax Plus sent the brochure to at least 40 recipients, including Plaintiff Innovative Accounting Solutions, Inc. ("IAS"). This lawsuit followed.

IAS sues Credit Process Advisors, Inc., AAB, Renner, VLO, and several unnamed defendants. IAS contends that Defendants are responsible for sending it an unsolicited fax advertisement, in violation of the TCPA. In addition, IAS claims that Defendants are liable for conversion under common law and Mich. Comp. Laws § 600.2919(a)(1)(a), because Defendants converted IAS's "fax machine, paper, toner, and employee time for Defendant[s'] own use." (Compl. ¶ 65, ECF No. 1.)

Renner and VLO contend that they are not liable because they had no involvement in sending the fax. They were not even aware of it until IAS filed this lawsuit. They seek summary judgment on all claims against them.

## II. Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c); *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1); *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. *Matsushita*, 475 U.S. at 574; *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'") (quoting *Anderson*, 477 U.S. at 248). In resolving a motion for summary judgment, the Court does not weigh the evidence and determine the truth of the matter; the Court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. Analysis

**A. TCPA claims**

The parties do not dispute that Fax Plus sent the fax at AAB's direction. Moreover, there is no genuine dispute that Renner and VLO were unaware that AAB intended to distribute the brochure via fax. Nevertheless, IAS claims that Renner and VLO are liable as "senders" under the FCC's regulations, which recognize that the person who physically sends a fax is not the only one who can be liable under the TCPA. Those regulations define the sender of an unsolicited fax advertisement as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). As the Sixth Circuit has explained, this definition

> purports to allocate liability in cases where the party that physically sends (*i.e.*, dispatches) the fax and the party that *causes* it to be sent are not one and the same. That situation typically arises when a person or company hires a fax broadcaster, "which transmit[s] other entities' advertisements to telephone facsimile machines for a fee[.]" 71 Fed. Reg. 25,967, 25,971 (May 3, 2006) (codified at 47 C.F.R. pt. 64). Both kinds of entities appear to meet the statutory requirement of "send": the broadcasters because they in fact dispatch the advertisements via fax, the hirers (for lack of a better term) because they cause the fax to be conveyed. In this statutory context, the regulation by its terms would allocate liability under § 227(b) first to the hirers, as the party "whose goods or services are advertised or promoted in the unsolicited advertisement[,]" or as the party who otherwise put the broadcaster up to sending the fax (*i.e.*, "the person or entity on whose behalf" the junk fax was sent). 47 C.F.R. § 64.1200(f)(10).

*Health One*, 889 F.3d at 802.

IAS contends that Renner and VLO qualify as senders under the FCC definition because (1) the fax advertised their services, and (2) the fax was sent on their behalf. The evidence, however, fails to support either theory.

### 1. Liability as the person/entity "whose goods or services are advertised or promoted" in the fax

IAS principally relies on the fact that the faxed brochure purportedly advertised Renner and VLO's services, though that claim is a tenuous one. The fax repeatedly refers to Credit Process Advisors, prominently displaying its logo, tagline ("We Protect Your Corporate Heartbeat ®"), URL, and business address. The fax also requests payment of a registration fee to Credit Process Advisors. The fax identifies Renner as a lawyer and "subject matter expert," and incorrectly refers to VLO as "Velo Law Firm," but there is no specific mention of their services or of a means to contact them. It barely qualifies as an advertisement for Renner or VLO.

In any event, the Sixth Circuit made clear in *Health One* that liability under the TCPA for sending an unsolicited fax attaches only to parties who physically sent the fax or who caused it to be sent. It does not attach to an "innocent party" like Renner or VLO, who did neither of these things. *See Health One*, 889 F.3d at 802.

In *Health One*, the innocent party was a manufacturer of prescription drugs. A seller of those drugs sent unsolicited faxes to various medical providers, advertising the seller's prices for those drugs. Recipients of the faxes sued the seller and the manufacturer, but the district court determined that the manufacturer could not be liable because it knew nothing of the faxes. The Sixth Circuit affirmed that decision, rejecting the plaintiff's theory that the manufacturer was liable because the faxes advertised the manufacturer's drugs. According to that court, the FCC's definition must be considered in the context of a statute that imposes liability on one who "use[s]" a fax machine to send an unsolicited fax. *Id.* Properly construed, the regulation "does not strip the 'send' out of 'sender.'" *Id.* Accordingly, an entity with no knowledge of the faxes could not "by some legal alchemy be held liable for having 'sent' [them]." *Id.*

Like the manufacturer in *Health One*, Renner and VLO are not liable under the TCPA because they did not send the unsolicited fax or cause it to be sent. Indeed, they had no knowledge of the fax, or of AAB's intent to send it, until after the fact. The mention of Renner and VLO in the fax itself is not sufficient to make them liable. *Accord Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 889 (11th Cir. 2018) (citing *Health One* and recognizing that "a defendant who has no connection whatsoever to the sending of the fax cannot be held liable under the TCPA").

IAS argues that *Health One* is not controlling because it conflicts with earlier panel decisions by the Sixth Circuit—namely, *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016), and *Imhoff Investment, LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015). IAS notes that a panel decision by the Court of Appeals cannot overrule a prior one. *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000). Consequently, *Siding* and *Imhoff* control to the extent that they are inconsistent with *Health One*.

*Siding* and *Imhoff* are distinguishable. In *Siding*, the TCPA defendant hired a fax broadcaster to advertise the defendant's services to potential customers. The Sixth Circuit noted that, when the FCC adopted the present definition of "sender" in November 2006, it expanded the scope of that definition by adding "'the person or entity . . . whose goods or services are advertised or promoted in the unsolicited advertisement.'" *Siding*, 822 F.3d at 891 (quoting 47 C.F.R. § 64.1200(f)(10)). The Court of Appeals did not apply the expanded 2006 definition to that case, however, because the new definition became effective after distribution of the faxes at issue, and the court declined to apply it retroactively. *Id.* at 895-96.

In *Imhoff*, the TCPA defendant hired a fax broadcaster to advertise its restaurants. The Court of Appeals held that the defendant might be liable because it "was the entity 'whose goods or services are advertised or promoted in the unsolicited advertisements'" received by the plaintiff.

6

*Imhoff*, 792 F.3d at 635. IAS argues that, like the defendant in *Imhoff*, Renner and VLO are liable for the fax in this case because the fax advertised their services.

*Siding* and *Imhoff* do not conflict with *Health One*. We know that because the court of appeals says so. The fax recipient in *Health One* cited *Siding* and *Imhoff* as authority for its position that the drug manufacturer could be liable under the FCC's definition. However, the Sixth Circuit held that those cases were distinguishable. "In both those cases the defendant in fact hired a fax broadcaster to send out the junk faxes. And thus in neither case did [the court] hold, or have occasion to hold, that an innocent party—like [the drug manufacturer] here—could by some legal alchemy be held liable for having 'sent' the faxes." *Health One*, 889 F.3d at 802. Thus, *Health One* is controlling where, as here, the defendants are innocent parties who were not involved in sending the fax. *Siding* and *Imhoff* do not apply in these circumstances.

IAS believes that *Health One* misinterprets the FCC's rule by ignoring what it says. Regardless, this Court is bound to follow the interpretation in *Health One*. And even if that were not the case, the Court finds that the logic of *Health One* is persuasive. The FCC's definition provides a means of identifying parties who are responsible for instigating the distribution of junk faxes, even if they were not the ones who physically transmitted them. But the definition does not, and legally could not, make someone liable solely because their goods or services were mentioned in the fax. Not only would such a rule be divorced from the text of the TCPA, which requires "use" of a fax machine, it could also lead to "absurd and unintended results." *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 797 (7th Cir. 2016). For instance, an entity could bankrupt its competitor by sending thousands of unsolicited faxes advertising its competitor's goods or services. *See id.* ("Although the literal language of the regulation suggests that such a result is possible, . . . to be liable as a sender, a person must have done something to advertise goods or services."). Or, as in this case, the organizer of a conference or seminar could subject the speakers

7

at that event to TCPA liability simply by mentioning their names and occupations in a fax advertising the event. Neither the text of the TCPA nor the concept of "sender" in the FCC regulations supports such a result.

### 2. Liability as the person/entity "on whose behalf" the fax was sent

IAS attempts to distinguish *Health One* because, unlike the innocent party in that case, Renner and VLO knew about the advertisement, had some control over its content, and knew that AAB would distribute it widely, and yet Renner and VLO did nothing to limit AAB's manner of distribution. IAS contends that these facts suffice to make Renner and VLO liable as senders under the first part of the FCC definition—i.e., parties "on whose behalf" the fax was sent.

The Sixth Circuit has used the following non-exclusive list of factors to determine whether an unauthorized fax was sent "on behalf of" the defendant:

> the degree of input and control over the content of the fax(es), the actual content of the fax(es), contractual or expressly stated limitations and scope of control between the parties, privity of the parties involved, approval of the final draft of the fax(es) and its transmission(s), method and structure of payment, overall awareness of the circumstances (including access to and control over facsimile lists and transmission information), and the existence of measures taken to ensure compliance and/or to cure non-compliance with the TCPA.

*Siding*, 822 F.3d at 899 (quoting *Cin–Q Autos., Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-cv-01592-AEP, 2014 WL 7224943, at *7 (M.D. Fla. Dec. 17, 2014)). These factors seek to hold liable the entity "ultimately at fault" for causing the unsolicited fax. *Id.*

Application of the foregoing factors to this case conclusively demonstrates that the fax at issue was not sent "on behalf of" Renner or VLO.

#### (a) Degree of input and control

Renner had some control over the content of the brochure because he was the speaker for the seminar; however, his input was minor compared to AAB. Moreover, no one asked him to approve a fax, and he had no reason to expect that the brochure would be distributed as such. Indeed,

8

AAB told him that it would distribute the brochure in an email. Thus, although he provided some input into the brochure, he did not exert any meaningful control over the fax. His involvement ended without any action by him to instigate the fax.

*(b) Content of the fax*

As discussed above, the actual content of the fax mainly focuses on Credit Process Advisors, which suggests that AAB or Fax Plus sent the fax on behalf of Credit Process Advisors, rather than Renner or VLO.

*(c) Relationship to the sender*

Fax Plus had no relationship whatsoever with Renner and VLO, contractual or otherwise. And although AAB was a legal client of Renner and VLO, there is no evidence of an arrangement or understanding between them regarding distribution of the brochure via fax.

*(d) Awareness of the circumstances*

There is no evidence that Renner or VLO had access to, or control over, the list of recipients of the fax. Presumably, AAB gave that information to Fax Plus.

*(e) Payment and compliance*

Neither Renner nor VLO paid for distribution of the fax or approved its transmission. Indeed, they were not even aware that the brochure might be distributed by fax. Thus, they had no reason to take measures to ensure compliance with the TCPA. The burden of compliance, and the consequences of non-compliance, should be shouldered by the parties involved in sending the fax—Fax Plus and AAB.

Accordingly, even when viewing the evidence in the light most favorable to IAS, the foregoing factors suggest that Fax Plus sent the fax on behalf of AAB or Credit Process Advisors. None of the factors indicate that Renner or VLO were ultimately responsible for sending the fax.

IAS compares this case to one in which the defendant "hired a marketing manager to market its dental practice and gave him 'free rein' to do so. . . . [and then] Defendant's marketing manager contracted with B2B to initiate a fax advertisement campaign on behalf of the dental practice." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, DDS*, 781 F.3d 1245, 1258 (11th Cir. 2015). That case is inapposite. Unlike the dental practice in *Palm Beach*, which hired the marketing manager to promote its services, Renner and VLO did not hire AAB or Fax Plus to promote their services. Moreover, Renner and VLO did not have the same degree of control over AAB that a dental practice would have over its employee. Accordingly, there is not a comparable basis for concluding that anyone acted "on behalf of" Renner and VLO when hiring Fax Plus to distribute the brochure.

In short, Renner and VLO do not qualify as senders under the FCC's rules.

### 3. Liability as principal for agent

IAS also believes Renner and VLO are liable under a "common law agency" theory because they allegedly granted AAB actual or apparent authority to send the fax. However, the Sixth Circuit has held that the "on behalf of" standard in the FCC regulations is the appropriate standard to apply because it "effectuates Congress's intent in passing the TCPA." *Siding*, 822 F.3d at 899. As a "middle ground between strict liability and vicarious liability," this standard

> blends (1) federal common-law agency principles, such as whether and to what extent one entity controlled the other, and (2) policy considerations designed to address which entity was most culpable in causing a TCPA violation, such as whether and to what extent each entity investigated the lawfulness of the fax broadcasts at issue.

*Id.* at 898-99. In *Siding*, the Sixth Circuit declined to rely solely on agency principles to determine liability because "the FCC plainly knows how to impose the standards of agency law when it wishes to do so. But the FCC . . . imposed no such standards . . . [on] fax broadcasters." *Id.* at 897 (citations omitted). For the same reasons, this Court declines to rely solely on agency principles in this case.

10

Because IAS cannot meet the standard required by the FCC regulations, it cannot prove its TCPA claim against Renner and VLO.

### B. Conversion claims

IAS contends that the unsolicited fax amounted to conversion under Michigan law. Renner and VLO argue that the Court should enter judgment in their favor on the conversion claims. IAS offers no response to these arguments.

Because Renner and VLO are the ones asking for summary judgment, they have the burden of showing that they are entitled to judgment as a matter of law. They have satisfied this burden. They are not liable for conversion for essentially the same reason that they are not liable under the TCPA.

Like IAS, the plaintiff in *Health One* also brought conversion claims against the manufacturer under Michigan statutory and common law. The court of appeals agreed with the district court that the plaintiff's conversion claims under Michigan law were subject to dismissal. According to the court of appeals, the plaintiff's arguments in support of its conversion claims were "derivative" of its arguments in support of its TCPA claim. *Health One*, 889 F.3d at 803. The same is true here.

> The district court in *Health One* aptly summarized the applicable law as follows:
>
> In Michigan, common law conversion includes "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 351-52 (2015). It is an "intentional tort in the sense that the converter's actions are willful, although the tort can be committed unwittingly if unaware of the plaintiff's outstanding property interest." *Paige v. Paige*, No. 283811, 2009 WL 2426261, at *2 (Mich. Ct. App. Aug. 6, 2009) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 291 (1992)).
>
> Statutory conversion under Mich. Comp. Laws § 600.2919a(1)(a) permits a plaintiff to recover treble damages, costs and attorney fees that accrue as the result of "another person's stealing or embezzling property or converting property to the other person's own use." To plead this cause of action, a plaintiff must plead the same elements as

common law conversion, and also that the property converted was "to defendant's own use." *Aroma Wines & Equip., Inc.*, 497 Mich. at 356. To satisfy the "own use" element, a plaintiff must allege that "the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.* at 359.

A party may be liable directly for conversion, and also "by actively aiding or abetting or conniving with another in such an act. Indeed, one may be liable for assisting another in a conversion though acting innocently." *Prime Fin. Servs. LLC v. Vinton*, 279 Mich. App. 245, 276 (2008) (internal quotation and citation omitted).

*Health One Med. Ctr., Eastpointe, PLLC v. Bristol-Myers Squibb Co.*, No. 16-cv-13815, 2017 WL 3016521, at *4-5 (E.D. Mich. July 17, 2017).

In this case, IAS cannot prove its conversion claims because there is no genuine dispute that Renner and VLO had no involvement in the conduct giving rise to those claims. They did not send the fax to IAS or assist anyone in its transmission. Consequently, they did not, directly or indirectly, exert dominion over IAS's property.

## **Conclusion**

For the reasons herein, the Court will grant the motion for summary judgment by Defendants Renner and Velo Legal Services, PLC. There is no genuine dispute of material fact in regards to the claims against them; thus, they are entitled to judgment as a matter of law.[2]

An order will enter consistent with this Opinion.

Dated: February 27, 2020         /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 United States District Judge

---

[2] Renner and VLO also ask for an award of attorneys' fees for bringing their motion, but they provide no authority or support for that request. Consequently, the Court declines to consider it.

12

**Exhibit**

## CREDIT PROCESS ADVISORS PRESENTS...
## KNOW YOUR CUSTOMER



Cash flow is the lifeblood of any business – without it your company will suffer a financial heart attack. Learn the tips and best practices of credit and receivable management from our team of subject matter experts and see how ...

We Protect Your Corporate Heartbeat ®

☐ **MICHIGAN** April 29, 2015
*Hawthorn Suites of Troy:*
2600 Livernois Rd, Troy MI, 48083

**Seminar: 10:30 AM - 12:00 PM**
**Registration starts at 10 AM!**

Fee:
$55 + tax / person

### Speaker:

Lawyer - Knowing your customer is crucial to collecting your receivable.
- What is the customers real name and how will it impact me?
- Understand the difference between an Inc., LLC, DBA, LP, PC, Corp.

**Scott Renner,**
Velo Law Firm

At Credit Process Advisors... *We Protect Your Corporate Heartbeat* ®
www.creditprocessadvisors.com

CREDIT PROCESS ADVISORS PRESENTS... 

Please register by completing the form and fax to our office 1-866-266-0137, email info@creditprocessadvisors.com or mail to the below address

**Note: Your credit card statement will show billing from Account Adjustment Bureau**

| First Name: | Last Name: |
|---|---|
| Company Name: | Title: |
| Mailing Address: | City/Prov: |
| Postal Code: | Phone Number: |
| Extension: | Email Address: |

Charge to: ☐ VISA  ☐ MasterCard  ☐ Check enclosed payable to: Credit Process Advisors Inc.

Card Number: _____ Name on Card: _____

Expiration Date: _____ Security Code: _____ Signature: _____

*Address: 217 Ann Arbor Rd. Suite 212, Plymouth MI, 48170*