UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNOVATIVE ACCOUNTING
SOLUTIONS, INC.,

       Plaintiff,

v.

CREDIT PROCESS ADVISORS, INC., *et al.*,

       Defendants.
_____/

File No. 1:15-CV-793

HON. PAUL L. MALONEY

## **OPINION**

This is an action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq*. Before the Court is a motion by Plaintiff Innovative Account Solutions ("IAS") to certify a class action (ECF No. 62). Defendants Account Adjustment Bureau, Inc. ("AAB") and Credit Process Advisors, Inc. ("CPA") oppose the motion. For the reasons herein, the Court will grant the motion.

### **I. Background**

AAB is a debt collection agency in Michigan. CPA is a Michigan corporation affiliated with AAB. In April 2015, AAB wanted to generate interest in an educational seminar that it had organized in Troy, Michigan, on the topic of "tips and best practices of credit and receivable management." (*See* Brochure, ECF No. 1-1.) AAB created a brochure with details about the seminar and asked Fax Plus, a fax broadcaster in Canada, to distribute the brochure in Michigan via fax. The owner of Fax Plus advised AAB that she had a "USA database" that she had never used; it contained over 48,000 numbers in Michigan. (4/1/2015 Email, ECF No. 63-2,

PageID.2134.) Fax Plus subsequently transmitted the brochure more than 14,000 times on April 23-24, 2015. (*See* 2/24/2015 Emails, PageID.2128-2129.) IAS was one of the recipients.

## II. TCPA

IAS alleges that it has no business relationship with AAB, CPA, or Fax Plus, and did not consent to receive faxes from them. It sues AAB and CPA under the TCPA, which makes it unlawful to "use any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement," subject to a business-relationship exception that applies if the fax contains a proper opt-out notice. 47 U.S.C. § 227(b)(1)(C). An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The TCPA permits a private right of action to recover damages for a violation of the statute. 47 U.S.C. § 227(b)(3).

## III. Class Certification

IAS brings this action on behalf of itself and a proposed class of plaintiffs defined as follows:

> All persons sent one or more telephone facsimile messages on April 23 or April 24, 2015 about a "Know Your Customer" seminar by Credit Process Advisors to be held on April 29, 2015, at Hawthorne Suites of Troy, Michigan.

(Am. Mot. for Class Certification, ECF No. 62, PageID.1986.) IAS asks the Court to certify this class under Rule 23 of the Federal Rules of Civil Procedure.

"In order to obtain class certification, [a] plaintiff must . . . satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). In addition, Rule 23(b)(3), the rule under which IAS seeks class certification, requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other methods" of adjudication. Fed. R. Civ. P. 23(b)(3). Finally, there is an implied requirement that the class be sufficiently ascertainable. In other words, "'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997)).

As the party seeking class certification, IAS "has the burden to prove the Rule 23 certification requirements." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "[A] judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings . . . ." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976). However, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Such compliance must be checked through a "'rigorous analysis.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Ordinarily, this means the class determination should be predicated on evidence the parties present concerning the maintainability of the class action." *Young*, 693 F.3d at 537. "[T]he district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of [a] class motion without resolving factual and legal issues." *Id.*

**A. Numerosity**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A spreadsheet provided by IAS indicates that there are over 14,000 members of the proposed class. The spreadsheet lists the names of various companies, and next to each name is a time and date, as well as a "result," whether "Sent" or "Failed." (ECF No. 63-10.) The list contains

3

over 20,000 entries, at least 14,000 of which have "Sent" as the result. (*Id.*) IAS's name appears in one of the entries on the list.

Apparently, Fax Plus created the spreadsheet after Defendants asked it for a report of the number of faxes that "went through" during Defendants' fax marketing campaign. (*See* Emails, ECF No. 63-11, PageID.3154.) Defendants themselves refer to the spreadsheet as a "facsimile report" that identifies "the numbers to which faxes were sent on a particular day, and the individual or entity . . . associated with that number in the facsimile broadcaster's database." (Defs.' Response 8, ECF No. 68.) Fourteen thousand class members is sufficiently numerous to make joinder impracticable. Accordingly, IAS has satisfied the numerosity requirement.

**B. Commonality**

> Commonality requires that "there are questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). So all class members' "claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." [*Dukes*, 564 U.S. at 350.]

*Mays v. LaRose*, No. 19-4112, 2020 WL 1023039, at *11 (6th Cir. May 3, 2020).

IAS has satisfied the commonality requirement because the proposed class members all received the same fax as part of the same course of conduct by Fax Plus. Common questions that the Court can resolve in these proceedings include the following: (1) whether the fax qualifies as an advertisement; (2) whether the fax was unsolicited (i.e., whether the recipients gave express invitation or permission to receive the fax); (3) whether the business-relationship exception applies, and if so, whether the opt-out notice on the fax is adequate;[1] (4) whether AAB, CPA, or both, are liable as "senders" of the fax under the applicable FCC regulations; (5) whether the class

---

[1] The fax states: "Fax Plus- Removal number 855.655.2151 or myfaxremoval@gmail.com." (ECF No. 63-1, PageID.2019.)

members are entitled to damages; and (6) whether Defendants' actions were willful and, if so, whether the Court should award treble damages under 47 U.S.C. § 227(b)(3).

### C. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* (quoting *Senter*, 532 F.2d at 525 n.31).

IAS's claim is typical of the class. Its claim arises from the same course of conduct and is based on the same legal theory. Defendants resist this conclusion because "[e]ach class member would still have to establish that they received the facsimile at issue and did not consent to such transmission." (Defs.' Resp. 14, ECF No. 68.) That may be true, but it does not render IAS's claim atypical. Moreover, it is not necessarily true that each class member will have to individually establish receipt and lack of consent. The fax report may be sufficient to establish receipt by the class members. *See Ira Holtzman, CPA v. Turza*, 728 F.3d 682, 684-85 (7th Cir. 2013) (finding "no reason for recipient-by-recipient adjudication" where the plaintiff presented a fax transmission report). And the circumstances in which Fax Plus compiled the list of recipients for Defendants may be sufficient to establish lack of consent by the class. At this stage, however, the Court does not "inquire into the merits of the plaintiff's suit." *Beattie*, 511 F.3d at 561.

### D. Adequacy

Adequacy requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court looks at two criteria to make this determination:

5

"1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

Defendants argue that IAS and one of its attorneys, Mark Wasvary, are not adequate representatives because IAS and Wasvary have an ongoing business relationship that presents a conflict of interest. IAS is a corporation with only one owner/employee, Kerri Johns-Littleton. (Johns-Littleton Dep. 28, ECF No. 63-5.) She started the business in 1998. IAS provides its clients with tax preparation and accounting services. (*Id.* at 30-32.) Since 2001 or 2002, IAS has provided some accounting services for Wasvary, including "do[ing] his payroll on a quarterly basis" and "t[ying] out his book of records for his tax returns." (*Id.* at 33-34.) She also regularly tells him about unsolicited faxes that she receives, to see if there is a possible remedy. (*Id.* at 40-41.)

The Court cannot discern how the relationship between IAS and Wasvary would impair the interests of the class or prevent IAS and Wasvary from being adequate representatives. This is not a case in which there is such a close personal or financial relationship between the plaintiff and the attorney that there is a risk the plaintiff "might . . . be motivated to maximize the attorney's fee," at the expense of the class. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003). Although there is a recurring business relationship between IAS and Wasvary, there is no indication that IAS is financially dependent upon Wasvary or that it has a financial stake in his business; Wasvary is simply one of IAS's clients. *Cf. Sipper v. Capital One Bank*, No. CV 01–9547 LGB (MCX), 2002 WL 398769, at *5 (C.D. Cal. Feb. 28, 2002) (denying certification where class counsel and the named plaintiff were business partners in a series of real estate transactions and joint defendants in a lawsuit). There is, thus, no indication that IAS would stand to benefit by maximizing Wasvary's fees.

Moreover, there are multiple attorneys representing IAS in this action. IAS's other attorneys do not work at the same practice as Wasvary and have no apparent personal or financial connection to IAS, Johns-Littleton, or Wasvary. These other attorneys work for a law firm with extensive experience in TCPA litigation, including TCPA class actions. (*See* Bock, Hatch, Lewis & Oppenheim, LLC Firm Resume, ECF No. 63-12.) Thus, the Court is satisfied that, collectively, IAS and its counsel can adequately represent the interests of the class.

### E. Predominance

Under Rule 23(b), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). IAS "'must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (quoting *Beattie*, 511 F.3d at 564).

Defendants argue that the proposed class does not meet the predominance requirement because the Court will have to adjudicate, on an individual basis, whether the fax recipients consented to receiving the fax. According to Brad Lohner, the person at AAB who hired Fax Plus to send the brochure, Fax Plus told him several times that her list of fax numbers was an "opt-in" list, meaning that "people that were on the fax list had consented to be there." (Lohner Dep. 83, ECF No. 63-2.)

Two TCPA cases from the Sixth Circuit provide some guidance on when individual issues of consent predominate over common issues in a TCPA junk-fax case. In *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017), the Court of Appeals affirmed the denial of class certification where "individualized questions of consent prevent[ed] common questions from predominating under Rule 23(b)(3)." *Id.* at 466. The defendant in that

7

case produced evidence that several thousand of the fax recipients were current or former customers of the defendant, had provided consent to receive the fax at issue, and thus would not have valid claims. *Id.* at 468. That evidence, which included many pages of consent forms, established that the task of identifying which of the 53,000 potential class members had consented would dominate the litigation going forward. *Id.*

By contrast, in *Bridging Communities*, the Court of Appeals reversed the denial of class certification because the defendant merely "raised the possibility" that "individual class members might have solicited or consented to receiving the challenged faxes." *Bridging Cmtys.*, 843 F.3d at 1123, 1125. The Court of Appeals was "unwilling to allow such speculation and surmise to tip the decisional scales in a class certification ruling." *Id.* at 1125 (internal quotation marks omitted). The court also noted that "[e]ven where defendants point to some evidence that a defense will indeed apply to some class members . . . courts routinely grant certification because 'Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.'" *Id.* at 1126 (quoting *Smilow v. Sw. Bell. Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)).

This case is much closer to *Bridging Communities* than *Sandusky*. Lohner's testimony is not "speculation alone" that there are individual issues of consent, but it is close enough to doom Defendants' argument. At best, Lohner's testimony indicates what Fax Plus told him. It does not show what Fax Plus did. In other words, it does little more than raise the possibility that Fax Plus took steps to obtain consent from the recipients on its list.

Moreover, even if Fax Plus obtained some form of consent when assembling its fax list, there would still be a common issue of whether the means employed by Fax Plus to obtain consent was adequate. It is not at all clear that consenting to be on some sort of nationwide list was equivalent to giving express permission to receive the faxes from Defendants. *See Kavu, Inc. v.*

8

*Omnipak Corp.*, 246 F.R.D. 643, 647 (D. Wash. 2007) (Defendant obtained all of recipients' fax numbers from the same third-party; main issue was whether inclusion in third party's database constituted "express permission" to receive faxes, which did not require individualized inquiry); *Johansen v. One Planet Ops, Inc.*, No. 2:16-cv-00121, 2018 WL 1558263, at *5 (S.D. Ohio Mar. 5, 2018) (where telemarketer purchased a call list, issues of consent did not preclude class certification where defendant had produced no evidence of prior express consent from anyone, and where record indicated that consent was determinable on a class-wide basis since "consent was given, if at all, through an online form"). Further discovery may reveal that there are individual issues of consent that will dominate this litigation, but the evidence at this stage suggests otherwise. In short, IAS has satisfied the predominance requirement.[2]

### F.  Superiority

The Court must determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Analyzing superiority entails balancing the 'the desirability' of class treatment with 'the likely difficulties in managing a class action,'" and the "class members' interests in individually controlling the prosecution or defense of separate actions[.]" *See Sandusky Wellness Ctr.*, 863 F.3d at 471; Fed. R. Civ. P. 23(b)(3). Certifying a class is the superior way to adjudicate claims when a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other

---

[2] The Court rejects IAS's alternative argument that consent is irrelevant because the fax at issue does not contain an adequate opt-out notice. To the contrary, consent will always defeat a TCPA claim, whether there is an opt-out notice or not. The TCPA prohibits only "unsolicited" fax advertisements. It carves out an exception for an unsolicited fax to a recipient with whom the sender has an "established business relationship," *if* the fax contains an opt-out notice. 47 U.S.C. § 227(b)(1)(C)(i)-(iii). IAS apparently relies upon on a FCC rule requiring opt-out notices on *all* faxed advertisements, both solicited and unsolicited. *See* 47 C.F.R. § 61.1200(a)(4)(iv) (Aug. 1, 2006). In 2017, however, the D.C. Circuit invalidated this rule, holding that the FCC had no authority to issue rules governing solicited faxes. *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017). Accordingly, if the recipient consented to receive the fax, there can be no TCPA claim based on an inadequate opt-out notice.

undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Rule 23(b)(3) is directed at "the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting her or her rights." *Id.* at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

The maximum recovery for a TCPA claim is generally $1,500 per violation, if the Court awards treble damages. A class action is a superior method where, as here, "'the stakes are too small and the litigation costs are too high for the individual plaintiff to go forward.'" *In re Sandusky Wellness Ctr., LLC*, 570 F. App'x 437 (6th Cir. 2014).

### G. Ascertainability

Defendants argue that the class is not sufficiently ascertainable. The Sixth Circuit, however, has held that a fax log identifying recipients according to their fax number is sufficiently objective criteria to maintain a TCPA class action. *See Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014) (noting that "the record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement"); *accord Sandusky Wellness Ctr.*, 863 F.3d at 471 ("In the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a 'record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'") (quoting *Am. Copper & Brass*, 757 F.3d at 545); *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, No. 09-14444, 2016 WL 1394649, at *9 (E.D. Mich. Apr. 7, 2016) (same). This Court notes that the fax log IAS provided in support of its motion does not actually contain the fax numbers; instead, it lists the names of various entities, times and dates of fax transmissions, and the results of those transmissions. At this stage, however, the Court accepts Defendants' representations that the fax numbers are in the fax transmission report. And to ensure that those representations are correct, the Court will direct IAS to file the complete, unredacted fax

10

transmission report with the Court.³ The Court is prepared to revisit the issue of ascertainability should it find that the numbers are not available. *See Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (noting the "district court's continuing obligation to ensure that the class certification requirements are met, and . . . the district court's ability to alter or amend the certification order as circumstances change").

Defendants argue that fax numbers are insufficient because they do not identify the actual recipient of the fax. Defendants note that a fax number does not indicate who subscribed to that number, who owned the fax machine that received the fax, or who picked up the fax. However, not all of these details are necessary to prove a claim by a class member. Anyone whose telephone number was used to successfully transmit an unsolicited fax advertisement can bring a TCPA claim, whether or not they viewed the fax or owned the machine that received it. As the Sixth Circuit has explained:

> [U]nsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk.") (emphasis in original); *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 820 (8th Cir. 2012) (explaining that the TCPA was intended in part to "keep[] telephone lines from being tied up" by unsolicited fax advertisements); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003) (noting that "unsolicited fax advertising interferes with company switchboard operations and burdens the computer networks of those recipients who route incoming faxes into their electronic mail systems").

*Am. Copper & Brass*, 757 F.3d at 544-45. In other words, "viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right to have one's phone line and

---

³ The Court cannot discern the reason for redacting the names of the companies listed on the fax transmission report.

fax machine free of the transmission of unsolicited advertisements." *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015).

Furthermore, the "best objective indicator of the 'recipient' of a fax is the person who subscribes to the fax number." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016). Consequently, a fax log showing successful transmissions to particular fax numbers is sufficient to "make the recipient clearly ascertainable." *Id.* That is the sort of evidence IAS has provided here.

Finally, to the extent that the Court must identify the individuals or entities associated with the fax numbers in order to provide notice or relief to class members, there are mechanisms available for doing so. *See, e.g.*, *Lyngaas v. Curaden AG*, No. 17-10910, 2019 WL 6210690, at *17 (E.D. Mich. Nov. 21, 2019) (using a claims administration process to identify class members in a TCPA junk fax case). There does not appear to be any reason why such methods would be administratively infeasible in this case. Thus, Plaintiff has satisfied all the requirements for bringing a class action.

### IV.   Class Counsel

When certifying a class, the Court must appoint class counsel. Fed. R. Civ. P. 23(g). In making this appointment, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," and may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1).

As indicated above, Plaintiff's attorneys have shown that they have extensive experience in class actions—including TCPA actions—and that they are knowledgeable in the law. Accordingly, the Court will appoint IAS's attorneys as class counsel.

## V. Conclusion

For the reasons herein, the Court will grant IAS's motion to certify the class and will appoint its attorneys as class counsel.

The Court will enter an order consistent with this Opinion.

Dated: March 26, 2020                /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge